UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHLEEN KNAPP,

     Plaintiff,

v.                                        Case No. 1:17-cv-1126
                                        Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant,

_____/

## OPINION

      Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied her claim for disability insurance benefits (DIB).

      Plaintiff alleged a disability onset date of June 3, 2013. PageID.273. Plaintiff identified her disabling conditions as carpal tunnel syndrome, knee pain, migraines (4 or more episodes per month), and neck pain. PageID.276. Prior to applying for DIB, plaintiff completed four or more years of college, received a special education endorsement, and worked as a teacher. PageID.277. An Administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on April 26, 2017. PageID.67-75. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.  LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).  A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only.  This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).  Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923

(6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ's DECISION

Plaintiff's claim failed at the fourth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 6, 2013 and met the insured status requirements of the Social Security Act through December 31, 2018. PageID.69.

At the second step, the ALJ found that plaintiff had severe impairments of: migraine headaches; degenerative disc disease of the cervical spine, with related arthralgias; and obesity. PageID.69. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.71.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except: she can frequently stoop, crawl, crouch, kneel, and climb ramps or stairs; and she can occasionally climb ladders, ropes or scaffolds.

PageID.71. The ALJ also found at the fourth step that plaintiff is capable of performing her past relevant work as a teacher, because that work does not require the performance of work-related activities precluded by her residual functional capacity (RFC). PageID.74. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from June 6, 2013 (the alleged onset date) through April 26, 2017 (the date of the decision). PageID.75.

### III. DISCUSSION

Plaintiff set forth two issues on appeal.

### A. The ALJ's RFC finding is not supported by substantial evidence because it fails to address any of the limitations resulting from Plaintiff's "severe" impairment of migraine headaches.

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of her medically determinable impairments. 20 C.F.R. § 404.1545. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). As an initial matter, plaintiff contends

that the ALJ failed to address her migraine headaches under the listings at step three of the sequential evaluation. Plaintiff states that while there is no listing for migraine headaches, "agency policy" is to evaluate these headaches under Listing 11.03 (non-convulsive epilepsy). While plaintiff refers to this as the attached Exhibit A, there is no such attachment. Nor has plaintiff addressed the elements of Listing 11.03. In this regard, defendant contends that the referenced listing did not exist at the time of the ALJ's decision. *See* Defendant's Brief (ECF No. 10, PageID.624). Plaintiff has failed to develop a meaningful argument on this issue. Accordingly, this issue has been waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

Next, plaintiff contends that the ALJ failed to include any limitations in the RFC related to her migraine headaches. The ALJ addressed the migraine headaches as follows:

The claimant testified that she has been unable to work largely due to pain and headaches. Specifically, she testified to the following: she has problems sleeping at night due to pain and difficulties getting comfortable, and wakes up with a headache. She has migraines triggered by perfumes, bright lights, and loud sounds. She has between three and nine migraines per month. She can walk a few blocks and can lift up to ten pounds. . . .

In terms of the claimant's alleged headaches and migraines, evidence of record does not corroborate the frequency and intensity with which the claimant alleges her headaches present. The claimant had been under neurologist care for headaches prior to the alleged onset date, but in March of 2014 reported that she had been doing "[significantly] better" with her medication regimen and she felt she could receive ongoing medication refills from her primary care provider. In fact, she reported that she had been able to reduce her dosage of medication, presumably to minimize side effects. (Exhibit 5F/21). She reported at that time only one to two bad headaches per month. Later, in December of 2015, on a regular six-month follow-up, she reported perceived worsening of headaches; however, her primary care provider did not find cause to adjust her medication regimen. (Exhibit 13F/50). Although the claimant alleged as many as four bad headaches per month, she did not seek changes to her medication, nor did she return to her provider outside of regularly scheduled follow-ups. (Exhibit 13F). She has not sought

emergency care for significant or severe symptoms. This tends to undermine the alleged intolerability of the claimant's symptoms.

PageID.72-73. The ALJ later found that the RFC "is consistent with evidence of stable treatment for the claimant's headaches." PageID.74.

Plaintiff points out that the ALJ did not address other evidence which supports her claim. During the administrative hearing, plaintiff testified that the headaches were "the primary reason" why she could not work. PageID.92-93. Plaintiff acknowledged that by July 2013 (one month after the alleged onset date), the number of migraines decreased, that she no longer needed to go to the headache clinic, that the medication controlled the number of headaches, and that her primary care physician has been monitoring the headaches since then. PageID.93. Plaintiff stated that while the medication decreases the frequency of the headaches, "it still doesn't control the migraines once I get them." PageID.93. Plaintiff also stated that she has had daily headaches since 1988, and that the migraine headaches "come and go" depending on environmental situations which trigger the headaches (e.g., perfume, bright lights and loud sounds). PageID.94.

The ALJ questioned plaintiff at length about her treatment, including her failure to return to specialists given the recurrence of her daily headaches and migraine headaches. PageID.95-101. In this regard, in December 2014, the agency's examining physician found that plaintiff had a history of migrainous headaches, that she has noted improvement since initiation of prophylaxis, that she reports 3 to 4 episodes a month, and that "[c]ontinued aggressive prophylaxis would appear warranted." PageID.423.

As part of her argument, plaintiff contends that the ALJ failed to properly analyze the November 18, 2014 "medical source statement - headache" from her treating physician, Ronald

Baker, M.D. PageID.418-420.[1] A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §404,1527(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004);

---

[1] Plaintiff's statement of errors did not include a claim that the ALJ failed to properly evaluate Dr. Baker's opinion. Typically, the Court does not address matters which are not raised in the statement or errors. In this instance, the Court will waive the requirement because plaintiff has fully briefed the issue.

20 C.F.R. §404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

The ALJ acknowledged that plaintiff's migraine headaches were the driving force behind her disability claim. PageID.92-93. In his opinions from November 18, 2014 and December 4, 2015, Dr. Baker noted, among other things, that plaintiff had daily headaches and migraine headaches several times a month. PageID.418-420, 435-437. The doctor characterized the headaches as chronic and severe, and according to the doctor, when plaintiff has a headache, it precludes her from performing even basic work activities. PageID.418-420, 435-437. Nevertheless, the ALJ provided only a cursory evaluation of Dr. Baker's opinions:

> Little weight is also given to the medical source statements of the claimant's primary care provider, Ronald Baker, MD. (Exhibits 6F, 9F, 13F). Dr. Baker opines significant, extreme limitations that find no support in medical evidence of record. Physical examinations, particularly contemporaneous examinations from Dr. Baker himself, are fully within normal limits and are wholly inconsistent with the disabling limitations Dr. Baker opines. Accordingly, these statements are assigned little weight.

PageID.74.

Based on this record, the ALJ did not articulate good reasons as to how Dr. Baker's opinions were "wholly inconsistent" with the contemporaneous medical record. The Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston*, 245 F.3d at 534-35, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). "It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Services*, 753 F.2d 517,

519 (6th Cir. 1985). Here, the Court cannot trace the ALJ's reasoning regarding the extent of plaintiff's migraine headaches and any limitations caused by the headaches. With respect to Dr. Baker's opinion, the ALJ cited three exhibits (6F, 9F and 13F) with no further explanation. This cursory discussion is not helpful to the Court on appellate review. In this regard, the Court notes that Exhibit 13F is over 100 pages long. PageID.469-549, 551-586. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate plaintiff's claim that she suffers from disabling headaches.

> **B.     The ALJ erred by failing to apply the *de minimis* step 2 standard with respect to Plaintiff's mental impairments. Moreover, even assuming this could be excused, the ALJ also erred by failing to account Plaintiff's limitations from these medically determinable impairments in the RFC finding.**

Plaintiff contends that the ALJ erred by finding that her depression and anxiety were non-severe impairments at step two. PageID.71. Plaintiff's claim is not a ground for reversal. A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Maziarz*, 837 F.2d at 244. An ALJ can consider such non-severe conditions in determining the claimant's residual functional capacity. *Id*. "The fact that some of [the claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008). *See Hedges v. Commissioner of Social Security*, 725 Fed. Appx. 394, 395 (6th Cir. 2018) (an ALJ's failure to

find impairments "not severe" at step two is legally irrelevant, because the ALJ must consider the limiting effects of all impairments, including those that are "not severe", at step four).

Here, the ALJ found that plaintiff had a number of severe impairments at step two (PageID.69), and considered both the severe and non-severe impairments (including the depression and anxiety) at step four (PageID.71-74). The fact that plaintiff's claims of depression and anxiety were deemed non-severe is legally irrelevant. *Hedges*, 725 Fed. Appx. at 395; *Anthony*, 266 Fed. Appx. at 457. Accordingly, plaintiff's claim of error will be denied.

## IV.    CONCLUSION

For these reasons, the Commissioner's decision will be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to re-evaluate plaintiff's claim that she suffers from disabling headaches. A judgment consistent with this opinion will be issued forthwith.


Dated:  March 25, 2019                                  /s/ Ray Kent
                                                        United States Magistrate Judge